**CHARLES N. WHITE CONSTRUCTION CO., INC., Plaintiff,**

v.

**DEPARTMENT OF LABOR, an agency of the United States of America, Defendant.**

**No. WC 79–108–K.**

United States District Court,
N. D. Mississippi, W. D.

Aug. 31, 1979.

David L. Reynolds, Jackson, Miss., for plaintiff.

W. Wayne Drinkwater, Jr., Greenville, Miss., Timothy Sullivan, Washington, D.C., for Intervenor.

Thomas W. Dawson, Oxford, Miss., Nelda Lee, Dept. of Labor, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this action Charles N. White Construction Co., Inc. (White), plaintiff, sues the Department of Labor, an agency of the United States of America (DOL), defendant, seeking injunctive relief from DOL continuing with a construction contract on a project known as the Batesville Job Corps Center, No. IFB–ONP–79–29–JC, at Batesville, Mississippi, until a ruling is made on its bid protest filed with the Comptroller General within the General Accounting Office (GAO), an agency of the United States. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) for cause of action arising under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*[1] White alleged that on or about June 1, 1979, DOL issued an invitation for bids on the project and that it, White, prepared and filed with DOL a bid to perform all work required for the project for a total contract price of $2,934,900.00, with no qualifications; that on July 17 White's bid and the bids of other contractors were received and opened by DOL. Plaintiff alleged that at the bid opening the apparent low bidder was JESCO, the second low bidder was White and the third low bidder was T. H. Taylor, Jr., Inc. (Taylor); that the bid of JESCO was determined to be inappropriate and hence rejected by DOL because it did not qualify as a small business contractor; that on August 1 DOL rejected White's bid as being nonresponsive on the ground that White had failed to acknowledge on the bid form that it had received various addenda which had been issued after the invitation for bids was submitted; that DOL, on the same date it received White's bid, awarded the project to Taylor; that thereafter White filed a bid protest with GAO that DOL awarded the contract to Taylor without giving White an opportunity to have its protest determined by GAO. On August 15 White applied for a temporary restraining order. At that time the court determined that Taylor should be notified and made a party defendant to the action, and also because of the complexity of the case, the cause should be set on August 27 for a hearing on the preliminary injunction.

Taylor moved to intervene as a defendant, which was allowed by the court, and filed an answer denying that White was

---

1. The complaint also alleges diversity jurisdiction which is inapposite because the Department of Labor is not a citizen of any state. *Bankers Trust Co. v. Texas & Pac. R. Co.*, 241 U.S. 295, 36 S.Ct. 569, 60 L.Ed. 1010 (1916); *Darling v. United States*, 352 F.Supp. 565 (E.D. Cal.1972).

entitled to injunctive relief.[2] DOL orally adopted the answer of Taylor, intervenor-defendant, and took the position that the contract had been lawfully awarded to Taylor and White's bid was properly rejected. It was agreed by counsel for all parties that pursuant to Rule 65(a)(2), F.R.Civ.P., hearing on the merits of the cause would be consolidated with the application for preliminary injunction, and the court could dispose of the matter as if it were on final hearing. Both sides presented oral and documentary evidence and memorandum briefs, as well as oral arguments, so that the matter is now ripe for decision on the merits. The court incorporates herein its findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P.

### 1. *Findings of Fact.*

On June 1, 1979, DOL issued invitation for bids on Project No. IFB–ONP–79–29–JC, through its architect/engineer for the project, Cooke-Douglas-Farr, Ltd. (CDF), of Jackson, Mississippi. The invitation requested bids for the construction of the Batesville Job Corps Center. Bids were to be opened at 2:00 p.m. on July 17 in Jackson.

Subsequent to the original invitation to bid, CDF issued five addenda, or modifications of the original solicitation. CDF prepared and issued all five addenda. Although DOL has authority in solicitations such as this one to revoke or modify addenda issued by project architect/engineers, CDF has authority to issue addenda on its own and has often done so without objection or prior clearance from DOL. However, it has no authority to award a contract. Only DOL, acting through its contracting officer, has such authority.

The first two of the five addenda, A and B, were attached to and mailed out with the original solicitation. Addendum C, the third addendum, was issued on June 28. It included a new form to be used in bidding. The final two Addenda, D and E, were

issued respectively on July 9 and July 13. Addendum D called for modifications that would add $4,638.00 to a bid. Addendum E called for modifications that would add $10,266.00.

July 13, the issuance date of Addendum E, was a Friday. The date bids were due was July 17, which was the following Tuesday. On Monday, July 16, Nelson Douglas of CDF, cognizant of the uncertain delivery date of items entrusted to the United States Postal Service, decided to contact all bidders on the Batesville project to ascertain that they were aware of all addenda, including Addendum E, which had been mailed three days before, *i.e.*, the Friday before the weekend. Douglas instructed his secretary, Shirley Smith, to call all the general construction bidders to ensure their knowledge of the addenda, especially of Addendum E. Ms. Smith did so; Charles White says he was so contacted and informed at 1:50 p.m. on July 16. Ms. Smith, however, did not testify. At that time Ms. Smith, according to Charles White, asked him whether White knew of and had received all addenda; Charles White testified that he answered Ms. Smith in the affirmative.

The bid form on which bids for the Batesville project were to be received contains spaces in which various information must be inserted. Among the information, of course, is the important item of the bid price for the contract. Standard operating procedure in the construction business, according to the evidence, is to complete bid forms only a few minutes before bids are to be opened. Pursuant to this practice, White sent its employee, Gail McGowan, to Jackson, where the bids were to be submitted to CDF and opened at its office. Ms. McGowan was to await a phone call from Charles White, plaintiff's president, by which she would be informed of the amount of White's bid. Approximately ten minutes before 2:00 p.m. on July 17, Charles White telephoned Ms. McGowan, his em-

---

**2.** In its answer, Taylor challenged the jurisdiction of this court but its counsel conceded in pretrial conference prior to the evidentiary hearing for preliminary injunction that we had jurisdiction in this cause.

ployee, that the amount of the White bid would be $2,934,900.00. Ms. McGowan filled in this amount on the bid form, and submitted the bid before the 2:00 p.m. deadline. The correct bid form, Addendum C, was utilized by White.

Another space on the bid form was for the purpose of noting all the addenda that the contractor had received. The contractor was required to fill in the number and date of each addendum so received by it. If this information was not included, the bid would be deemed by DOL to be nonresponsive and would not be considered for the project. Though fuzzy, the printing on the bid form indicating the space for addenda acknowledgement is legible. Charles White, however, was well aware of the requirement for noting all addenda received on the bid form and of the sanction for failing to do so. Through clerical oversight on White's part, none of the Addenda A–E was acknowledged in writing on the bid form. White had, in fact, received all five addenda and, according to Charles White, had taken into account the modifications contained within them in computing its bid.

Although Charles White stated that he had informed Ms. Smith of CDF that plaintiff had received and was aware of Addenda A–E, no written confirmation of this communication created prior to the time bids were opened exists. Moreover, Ms. Smith, who tabulated the bids, made no notation on the tabulation sheet that Charles White, plaintiff's president, had verbally acknowledged to her receipt of the five Addenda, A–E (D. Ex. 1).

Bids were opened promptly at 2:00 p.m. July 17, in Jackson, as scheduled; this was done in the presence of Cooke and Douglas for the architectural/engineering firm, David Murphy, government-authorized representative (GAR), for DOL, and a Mr. Greenblatt, member of an independent consulting firm engaged by DOL to advise it in projects of this type. In addition there were other persons present, including representatives of bidding contractors, but not including Charles White. Bid opening took place in Jackson for the convenience of the

bidders; CDF had no authority to award the contract, but the bids were tabulated and this information was disclosed to those present. The bids were promptly flown to Washington, D. C., by Murphy and delivered to DOL, which would award the contract after study by the Contracting Officer, Raymond E. Young, upon the recommendation of Murphy, the GAR.

The bids submitted were:

| | |
|---|---|
| JESCO, Inc. | $2,929,292.00 |
| Charles N. White Construction Co., Inc. | 2,934,900.00 |
| T. H. Taylor, Inc. | 2,942,000.00 |
| Carothers & Carothers | 2,971,851.00 |
| Robert L. Guyler | 3,192,000.00 |

Subsequent to the bid opening, Taylor lodged a formal protest with GAO, contending that JESCO was not a responsible bidder because it was not a small business contractor as required and defined by the procurement specifications. Taylor also protested the bid of the second low bidder, White, as not responsive because plaintiff's bid failed to acknowledge receipt of any of the five addenda. David Murphy testified that prior to August 1, the date on which the contract was awarded to Taylor, he did not contact either White or CDF to ascertain if White had in fact received the five addenda, stating that it would be inappropriate for him to do so. David Murphy also stated that he prepared his report and recommendation to Contracting Officer Young prior to August 1, discussed with Young White's failure to acknowledge Addenda A–E on its bid form, and that the bid was therefore deemed nonresponsive. Although Murphy's report to Young (D. Ex. 6) indicated knowledge that CDF's secretary had contacted plaintiff's office by phone, she "was unable to recall who she had spoken to at the office of White, the capacity of the party responding to the secretary is unclear."

Nelson Douglas had no personal contact with Charles White or any representative of plaintiff company on July 16. What he knows, apart from the instructions given to Ms. Smith, is that at the close of the day, she reported that all contractors bidding on

the job had been contacted, and that his telephone records indicate a call was placed to a Clarksdale number, 624–6589, which, according to Ms. Smith's notation, was White's business telephone (P. Ex. 13).

Nelson Douglas estimated, and we find as a fact, that Addenda A through C have an aggregate cost of $5,000; as heretofore found, Addendum D has a cost of $4,638.00, and Addendum E $10,266.00. All five addenda had a combined increased cost of $19,904.00; Addenda D and E had a combined increased cost of $14,904.00. Thus, the difference between White's bid and Taylor's was $7,100.00, or less than one-half of the combined cost of Addenda D and E.

### 2. *Conclusions of Law.*

■ This court's review of DOL's decision to determine White's bid nonresponsive and to award the Batesville contract to Taylor is limited by the provisions of the Administrative Procedure Act. The APA provides for a narrow scope of review of agency decisions. The question whether on the facts presented to it the DOL made the correct or the incorrect decision is not before the court. This court may act only if it determines DOL's action to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) [APA § 10(e)]. *See Hayes International Corp. v. McLucas,* 509 F.2d 247 (5 Cir. 1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975); *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970); *General Electric Company v. Seamans,* 340 F.Supp. 636 (D.D.C.1972).

■ The court must use the agency's procurement regulations, which have the force of law, *Paul v. United States,* 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), as its yardstick in evaluating the agency's decision. The general rule governing contract procurement states that "[p]reservation of the integrity of the competitive bid system dictates that, after bids have been opened, award must be made to that responsible bidder who submitted the lowest responsive bid." 41 C.F.R. § 1–2.404–1(a) (1978).

More particularly, "[a]ny bid which fails to conform to the essential requirements of the invitation for bids, such as specifications, delivery schedule, or permissible alternates thereto, shall be rejected as nonresponsive." *Id.* § 1–2.404–2(a).

■ The regulations further provide that minor informalities or irregularities in a bid will not render it nonresponsive. *Id.* § 1–2.405. These regulations, coupled with the Comptroller General's interpretive rulings, allow three exceptions to the rule that failure to acknowledge receipt of amendments renders a bid nonresponsive: The bid received clearly indicates that the bidder received the amendment, the omitted amendment has either no effect or a negligible effect on the essential terms of the bid invitation, or the bidder orally acknowledged prior to bid opening that he had received all addenda. *Id.* § 1–2.405(d). *See* B–179592 (1974); B–148162 (1962); B–185198 (1976). These regulations and cases comport with the policy of ensuring fairness among bidders because they do not allow a bidder the impermissible option of becoming eligible for the contract award by agreeing to be bound by the terms of the bid invitations as amended or avoiding the award by asserting nonreceipt of amendments.

White's contention with respect to Addendum C clearly falls within the first exception because Addendum C contained a revised bid form, and White submitted its bid on this form. White argues that this constituted an implied acknowledgement not only of Addendum C but also of Addenda A and B because they were issued prior in time in Addendum C, and were, in fact, attached to the original solicitation. It is unnecessary to reach this issue, however, because the argument does not encompass Addenda D and E. These material addenda must fall within the other two exceptions or the bid must be deemed nonresponsive.

The second exception, that the amendment has either no effect or a negligible effect on the contract, clearly does not apply to Addenda D and E. The additional

cost of these two addenda to the Batesville project is $14,904.00. This amount is larger than the spread among the bids of the three lowest bidders (JESCO, White, and Taylor—approximately $12,708.00). Because the additional cost of Addenda D and E is sufficient to alter the competitive order of the bids, the failure to acknowledge receipt of these addenda is not trivial. *See* B-148162 (1962) ($15.00 cost of nonacknowledged addendum negligible when next lowest bid more than $1,000 higher).

The third exception to considering a bid nonresponsive for not acknowledging the receipt of addenda arises when the bidder orally acknowledges receipt prior to bid opening. This exception is recognized in B-119732 (1954), *cited with approval in* B-185198 (1976), *and in* B-163885 (1968). In B-119732, a representative of the bidder orally acknowledged receipt of all addenda immediately prior to the opening of the bids. The Comptroller General determined that if the bidder's representative had authority contractually to bind the bidder, the bidder should receive the award.

Another Comptroller General decision, B-185198 (1976), imposes a limitation on this doctrine. In that case the bidder and the contracting officer agreed that prior to bid opening they had discussed three of the project's four addenda. However, the contracting officer had no recollection of discussing addendum four with the bidder. After bids were opened, the bidder produced a desk calendar upon which he had noted information contained in the fourth addendum which he stated the contracting officer had given him over the telephone. The Comptroller General denied the bidder's protest, holding that a prior oral acknowledgement must be *verifiable by independent evidence not under the exclusive control of the bidder. Id.* This rule conforms with the underlying purpose of the government's procurement regulations, namely; to preserve the integrity of the bidding proc-ess so that no bidder obtains an unfair advantage over another.

Combining B-119732 and B-185198, the precise question that the contracting officer, Raymond Young, had to consider was whether any evidence existed outside the exclusive control of White that he, a representative of plaintiff with undoubted power to bind it legally, was the person who acknowledged receipt of the addenda to Ms. Smith on July 16. Other than the testimony of White himself, the record is wholly silent that White in fact was the person with whom Ms. Smith spoke.[3] Therefore, this court cannot conclude that the decision of the DOL to reject White's bid as nonresponsive was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Scanwell Laboratories, Inc.,* 137 U.S.App.D.C. at 386, 424 F.2d at 874.

Having reached the conclusion that plaintiff has failed to demonstrate a substantial likelihood of success on the merits in a ruling by the Comptroller General, the first essential element to granting injunctive relief sought by plaintiff is lacking. We find it unnecessary to discuss the other familiar criteria laid down in *Canal Authority of State of Florida v. Callaway,* 489 F.2d 567 (5 Cir. 1974), as prerequisites for the issuance of a preliminary injunction.

Let an order be entered denying injunctive relief and dismissing the complaint with prejudice, at the cast of plaintiff.

---

3. CDF's telephone bill confirms that CDF called White on July 16 but does not indicate with whom Ms. Smith conversed.