No. 83-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

MARTEL CONSTRUCTION, INC.,
AND WILLIAM MARTEL,

Plaintiffs and Respondents,

-vs-

MONTANA STATE BOARD OF EXAMINERS, GOVERNOR
TED SCHWINDEN, SECRETARY OF STATE JIM WALTERMIRE,
AND ATTORNEY GENERAL MICHAEL T. GREELY, as members
thereof, and MORRIS BRUSETT, Director of the Dept.
of Administration,

Defendants and Appellants,

and

VOLK CONSTRUCTION, INC.,

Intervenor and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Hon. Mike Greely, Attorney General, Helena, Montana
Valencia Lane, Dept. of Administration, Helena, Montana
Alexander & Baucus, Great Falls, Montana

For Respondents:

Scully, Lilly & Andriolo, Bozeman, Montana

For Amicus Curiae:

Tom Johnson, Helena, Montana (Montana Contractors)
Anderson, Brown, Gerbase, Cebull & Jones, Billings,
Montana (Billings Contrators' Council)

Submitted on Briefs: June 30, 1983

Decided: August 12, 1983

Filed: AUG 12 1983

*Ethel M. Harrison*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The members of the State Board of Examiners, the director of the state Department of Administration, and Volk Construction, Inc., appeal from an order of the District Court, First Judicial District, Lewis and Clark County, granting a writ of mandamus to compel the Montana Board of Examiners to reject the bid of Volk Construction, as unresponsive to the solicitation for bids for the Montana Children's Treatment Unit Project.

We reverse the District Court and quash the writs of mandamus and certiorari.

Martel Construction, Inc., a Montana corporation, is a regularly licensed contractor with its office in Bozeman, Montana. William Martel is an officer of Martel. Volk Construction, Inc., a Montana corporation, is also a regularly licensed contractor with its office in Great Falls, Montana.

Governor Ted Schwinden, Secretary of State Jim Waltermire, and Attorney General Mike Greely comprise the Montana State Board of Examiners. Morris Brusett is the director of the state Department of Administration. These appellants will be referred to hereafter as "the state officers." Collectively they are responsible for, among other things, the solicitation of competitive bids for public works, determining successful bidders and awarding contracts for such works.

In late 1982, the state officers issued a solicitation for competitive bids for the construction of the Montana Children's Treatment Unit to be built in Billings, Montana.

The bid opening was to be held on February 9, 1983. Prior to the bid opening date, the solicitation for bids was amended by the state officers by addendum 1, dated January 18, 1983, addendum 2, dated February 2, 1983, and addendum 3, dated February 4, 1983.

The solicitation for bids contained a section entitled "Instructions to Bidders," which provided in Section E, Proposals, paragraph 2 as follows:

> "2. Proposals shall be in a sealed envelope and addressed to:
>
> "Department of Administration & Board of Examiners State of Montana.
> Architecture & Engineering Division, 1500 East Sixth Avenue, Helena, Montana   59620.
>
> "The envelope shall also contain the following information:
>
> "Name of Project _____
> Mont  A/E  Number _____
> Name  of  Contractor _____
> Montana  Public  Contractor's  License  No. _____
> Acknowledge receipt of Addendum No.   __,__,__,__."
> (Emphasis added.)

Paragraph E.3 provides:

> "3. Proposals entitled to consideration shall be made in accordance with the following instructions:
>
> "a. made upon form provided,
>
> "b. all blank spaces properly filled,
>
> "c. all numbers stated in both writing and in figures,
>
> "d. shall contain no additions, conditional or alternate bids, erasures, or other irregularities.
>
> "e. shall acknowledge receipt of all addenda issued." (Emphasis added.)

The work to be performed under the original bid solicitation was substantially increased by the requirements of addenda 2 and 3. These changes resulted in a material increase in the cost of the work of approximately $55,280,

- 3 -

which would not have been required under the original solicitation.

The bid form had on it a place for the acknowledgment of each addendum, with the date of each addendum. The bid submitted by Volk failed to acknowledge, on the envelope or on the bid form, receipt of addenda 2 and 3 as required by the "Instructions to Bidders."

When bids were opened on February 9, 1983, Volk had the low general contractor's bid of $1,698,000. The next bid, for the same options, was $174,600 higher. That bid was submitted by Martel.

Because addendum 3 was sent late, that is, close to the February opening date, the architect employed by the state for this project telephoned each contractor on February 8, 1983, to confirm that each was aware of addendum 3.

Martel protested Volk's bid. The architect again got in touch with Volk to inquire whether Volk received addenda nos. 2 and 3 and reported, "I was assured that Volk received and considered all addenda."

The Board of Examiners first considered Martel's bid protest at its regular meeting on February 22, 1983. Since all bids exceeded the appropriation available, the Board decided to approach the Legislature for supplemental funding before making any decision. Subsequently, the 1983 Montana Legislature approved an additional $350,000 for the Montana Children's Treatment Unit. There was still only enough money to award the general contract to Volk. The other bidders had submitted bids which would not meet the available monies even after the 1983 supplemental appropriation.

The Board of Examiners met a second time on March 24, 1983, to consider Martel's bid protest. Martel and his

- 4 -

attorney urged the Board to reject Volk's bid as unresponsive and threatened suit if the Board did not do so. The Attorney General noted that there had been a prior oral acknowledgment by Volk of the addenda and that Volk would be bound to a contract, and that in his opinion Volk had no advantage over other bidders. Nevertheless, the Board postponed its decision to allow for more research.

The Board met a third time on April 5, 1983. All parties were present. Volk and his attorney addressed the Board, and exhibited worksheets which Volk claimed showed addenda 2 and 3 were used in preparing his bid. Again the Board adjourned to allow for more research.

In the meantime, the Board of Examiners received memoranda from its counsel advising them not to accept Volk's bid and to set out the project for rebidding. Nevertheless, the Board met for a fourth time on April 7, 1983. They concluded that Volk was aware of addenda 2 and 3, could be bound to a contract including all the addenda, and that the contract should be awarded to Volk as the lowest bidder.

Martel commenced an action for writ of review, writ of mandate, or other appropriate writ in the District Court, First Judicial District, Lewis and Clark County, for the purpose of contesting the action of the Board of Examiners in accepting Volk's bid. After hearing and argument the District Court entered findings of fact, conclusions of law, and issued an order providing for a writ of mandamus to compel the Board of Examiners to reject Volk's bid as unresponsive to the specifications for the Montana Children's Treatment Unit Project. The state officers and Volk have appealed that decision to this Court. We have had the benefit of briefs from the Montana Contractor's Association,

Inc., and Billings Contractors Council, Inc., as amici curiae, each in support of Martel's position in this case.

The state officers and Volk raise four issues on appeal:

1. Does Martel, an unsuccessful bidder, have standing to procure mandamus?

2. Does certiorari lie in this case?

3. Can certiorari be considered in this case as ancillary to a writ of mandamus?

4. Does mandamus lie in this case?

IS MANDAMUS APPROPRIATE?

We will first discuss the last issue raised by the state officers. The District Court determined that a writ of mandamus should issue because the District Court found that Volk's bid was not responsive to the bid solicitation.

The statutory authority for the state officers to act in this cause is found in section 18-2-103(1)(c) as follows:

"(1) For the construction of a building costing more than $25,000 the department of administration shall:

". . .

"(c) under the supervision and with the approval of the board of examiners, solicit, accept, and reject bids and award all contracts to the lowest qualified bidder considering conformity with specifications and terms and reasonableness of bid amount;. . ."

In considering the legal effect of those statutory provisions, the District Court determined that the duty of the state officers to award the contract to the "lowest qualified bidder" gave the state officers discretion to determine whether the bidder was responsible, so interpreting Koich v. Cvar (1941), 111 Mont. 463, 110 P.2d 964. The District Court further determined that the statutory language requiring the state officers to consider conformity with

- 6 -

specifications and terms and reasonableness of bid amount meant a determination as to the <u>responsiveness</u> of the bidder to the bid itself. The District Court concluded that the Board of Examiners in determining "conformity with specifications" was determining <u>responsiveness</u> to the bid, which was ministerial in nature. The District Court relied on State ex rel. Lee v. Montana Livestock Sanitary Board (1959), 135 Mont. 202, 206, 339 P.2d 487, 490, defining a ministerial act as follows:

> "A ministerial act may perhaps be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act done."

Having concluded that in determining <u>responsiveness</u> the Board of Examiners was performing only a ministerial duty, the District Court then concluded that mandamus would lie. State ex rel. Brink v. McCracken (1931), 91 Mont. 157, 6 P.2d 869.

The briefs of amici in support of the District Court emphasized the importance of protecting the competitive bidding process for the construction of public works. They contend that in this case Volk, after the bid opening, knew that it had the lowest bid, because he could disclaim knowledge of the addenda, and could accept or reject the contract, that thus Volk in effect was given, to use Martel's expression, "two bites at the apple."

Amici fear that the integrity of the bidding process is endangered by recognition of oral acknowledgments of addenda because (1) there is then no assurance that there is a clear meeting-of-the-minds between the public body calling for the bids and the low bidder; (2) there is then no assurance that

all bidders are bidding on the same thing, and (3) that the action of the State Board of Examiners opens the door to the nightmare of oral acceptances if it gives Volk the benefit of its bid under its oral acknowledgment of addenda 2 and 3.

The state officers, in opposition, contend that Volk was bound to perform all of the addenda under its bid because Volk was aware of and considered the addenda in making its bid. The state points to the fact Volk had obtained a supplier's written price bid for material required only on addenda 2; and that the architect had called Volk on February 8, 1983, to discuss the addenda. The state officers rely on Boger Contracting Corp. v. Board of Commissioners of Stark County (Ohio App. 1978), 396 N.E.2d 1059, for authority that it could separately determine whether Volk could be bound, and whether Volk had actual knowledge of the addenda.

The District Court opted to follow the holding of the Comptroller General of the United States in Matter of MET Electrical Testing, Inc., B-201146 (March 17, 1981). Therein, the Comptroller rejected MET Electrical's bid as nonresponsive for failure to acknowledge a material addendum. The Comptroller General held:

> "Permitting oral acknowledgment of a material amendment is detrimental to the competitive bidding process in two ways. First, it allows a bidder 'two bites at the apple' by giving it the sole discretion to accept or reject the contract after bid opening, by affirming or denying that it intended to be bound by the amendment, and hence, the agreement. See National Investigation Bureau, Inc. B-191759 (July 18, 1978), 78-2 CPD 44. Second, because of the bidder's failure to timely acknowledge the amendment in writing, the terms of the resulting contract are not clear since the written bid acknowledges the terms of the solicitation but not relevant amendments, 42 Comp. Gen., supra.
>
> "Under these circumstances, we believe MET's bid was properly rejected as nonresponsive for failure

to timely acknowledge a material amendment in
writing."

The District Court also noted the holding in Charles N.
White Construction Co., Inc. v. The Department of Labor
(N.D. Miss. 1979), 476 F.Supp. 862, where the Federal
District Court denied injunctive relief against the
Comptroller General because he had rejected a bid where the
bidder had not made written acknowledgment of all addenda,
but a representative of the company did orally acknowledge
receipt of such addenda. The thrust of the holding in White,
however, was that the Comptroller General denied the bidder
protest because there was no independent evidence, aside from
the bidder, that he had received the addenda and considered
the same in making his bid. The facts of that case differ
from this case. The record here shows that Volk confirmed
the receipt of the addenda through telephone conversation
with the architect having charge of the project, and shows
that his bids had included material prices which could have
only come from consideration of the addenda.

The decision of the Federal District Court in White was
governed by the agency's procurement regulations, which
provided that "after bids have been opened, award must be
made to that responsible bidder who submitted the lowest
responsive bid." 41 C.F.R., § 1-2.404-1(a), (1978). A
further regulation provides that "[a]ny bid which fails to
conform to the essential requirements of the invitation for
bids, such as specifications, delivery schedule, or
permissible alternates thereto shall be rejected as
nonresponsive." 41 C.F.R., section 1-2.404-2(a), (1978).

It will be noted that there is a difference, though
perhaps not material, between the state statute governing the

- 9 -

state officers in this case, and the federal regulations governing the Comptroller General in the cases he had decided.

The fulcrum on which the decision here of the District Court is balanced is its determination that whether Volk's bid was responsive is ministerial only, and not an exercise of discretion by the state officers. It is essentially on this point that we disagree with the District Court. The state statute empowers the state officers to "award all contracts to the lowest qualified bidder considering conformity with specifications and terms . . ." It is our holding that the state officers, in determining whether bidders are qualified, and whether they will perform the contract in conformity with the specifications and terms of the solicitation are acting in a discretionary manner. It goes without citation to say that mandamus does not lie to control the discretion of public officers.

We regard the concerns in this case of amici with a good deal of respect. We agree that the bidding process for public contracts should be impartial, with equal opportunity given to all those participating in the public bidding, to avoid corruption, and that the process should at the same time procure for the state quality materials and workmanship for the most reasonable cost. We, therefore, look to the facts of this case to determine (1) whether there was a meeting of minds between the state and Volk under its bid, and (2) whether Volk could be held by the state to perform all of the addenda under its bid.

The evidence that Volk was contacted by telephone regarding the last two addenda and that Volk had begun preparation for fulfilling the obligations of addenda nos. 2

and 3, is adequate to show that Volk had actual knowledge of the addenda and that there was a meeting of the minds as to their existence and the respective requirements for fulfillment of the terms of those addenda.

Pertinent to the examination of whether Volk could be held by the state to perform the addenda is other language in the solicitation for bids.

Paragraph H.5 of the solicitation provided:

"All written addenda issued by the Architect/Engineer will become part of the Contract Documents and all Bidders shall be bound by such addenda, whether received or not by the Bidder. No oral or telephonic modifications of the Contract Documents will be considered."

Again, Paragraph I.2 of the solicitation for bids provided:

"2. The Owner reserves the right to reject all bids and to waive any informality or irregularity in any bid received."

These provisions of the solicitation for bids issued by the state officers make it clear that a bidder could not get "two bites at the apple," and decide to reject a bid if it pleased, because the language of this solicitation binds the bidder to full performance of the contract documents, including all of the addenda, received by the bidder or not. In making its bid, Volk agreed to that provision. Both Martel and Volk and all other bidders agreed that the state had the right to reject all bids or to waive any informality or irregularity in any bid received.

Thus, Volk, in submitting the bid here by the contract documents, bound itself to the full performance of the contract documents, including the addenda.

Moreover, we hold that the state officers properly have the power to waive irregularities in any bid offered. The state officers reserved that right in the solicitation for bids, and properly have that right in awarding public contracts. Of course, such waiver should only apply if the irregularity is immaterial. We hold the failure of Volk to make written acknowledgment of receipt of addenda in this case is immaterial for this principal reason: The changes in work required by addendum 2, amounted to approximately $37,355, and those by addendum 3 to approximately $17,925, for a total combined cost increase resulting from addenda 2 and 3 of $55,280. This amount is less than the spread between the first and second bidder, which was $174,000. If the spread in this case between the lowest and the second lowest bidder had been less than $55,280, so as to affect the bidding, then the failure of Volk to acknowledge receipt of the addenda in written form, would have changed from an immaterial to a material defect, an irregularity that the state officers could not then waive. See Charles N. White Construction Co., supra, 476 F.Supp. at 867.

Deviations in bid submissions which do not go to the substance of the bid (here Volk acknowledges his full responsiblity for the addenda as well as the contract), and irregularities which do not give one bidder a substantial advantage over other bidders, are types of irregularities that can be waived by public officers in awarding contracts. A.A.B. Electric, Inc. v. Stevenson Public School District (Wash. App. 1971), 491 P.2d 684; Prestex, Inc. v. United States (Ct. Cl. 1963), 320 F.2d 367, 372.

We, therefore, determine that in this case mandamus interferes with the discretion of the state officers in awarding the contract to the qualified bidder conforming to specifications and terms of the bid solicitation, and in considering the reasonableness of the amount bid. Our determination in effect disposes of all of the other issues in the case, because each other issue rises or falls with our determination of the right to mandamus here.

We have expedited our decision on this appeal, because of the importance of the question presented, and because the fate of the construction project is hanging in the balance. We reverse the District Court, quash any writ of mandamus and certiorari issued in this cause and order that the proceedings be dismissed in the District Court on remittitur. Let remittitur issue forthwith.

_John C. Shuly_
Justice

_____
                Chief Justice

_____

_____

_____

_____

_____
                  Justices