No. 90-369

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

SEBENA PAVING, INC., d/b/a
BIG SKY PAVING,

     Plaintiff and Appellant,

   v.

GALLATIN AIRPORT AUTHORITY,

     Defendant and Respondent.



APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Calvin L. Braaksma, Esq., Landoe, Brown, Planalp &
Kommers, P.C., Bozeman, Montana

     For Respondent:

          Edmund P. Sedivy, Jr., Esq., Morrow, Sedivy &
Bennett, Bozeman, Montana


                       Submitted on Briefs:  October 19, 1990

                              Decided:  December 5, 1990

Filed:

_____
        Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff Sebena Paving, Inc., (Sebena) bid on a construction contract with defendant Gallatin Airport Authority. In a summary judgment the District Court for the Eighteenth Judicial District, Gallatin County, upheld the award of the contract to another bidder. Sebena appeals. We affirm.

Sebena raises two issues on appeal. Our conclusion that the District Court did not err in allowing the Gallatin Airport Authority to accept the modified bid of Pioneer Ready Mix makes it unnecessary that we consider the second issue, whether the court erred in precluding Sebena from seeking damages.

In March and April of 1988, the Gallatin Airport Authority (GAA) solicited bids on a construction project for airport improvements. As a federally-assisted program of the Department of Transportation, the contract was subject to certain goals for participation by minority-owned business enterprises (MBEs) and woman-owned business enterprises (WBEs). All bids were required to include a "Schedule of Participation" showing that 2 percent of the work would be performed by MBEs and 4 percent of the work would be performed by WBEs.

The bids were opened on April 13, 1988. Pioneer Ready Mix (Pioneer) had submitted the low bid. Pioneer's bid provided that the goals of participation by MBEs and WBEs would be met by using Bozeman Sand and Gravel as a WBE for electrical trench and conduit

2

work and as an MBE for seeding work. Apparently there was some uncertainty as to whether a WBE, by virtue of being owned by a woman, also qualified as an MBE. After consulting the Federal Aviation Authority Civil Rights Office in Seattle, Washington, GAA decided that Pioneer's "Schedule of Participation" showing Bozeman Sand and Gravel as both a WBE and an MBE was not acceptable. Pioneer submitted a substituted "Schedule of Participation" on April 15, 1988, listing Bozeman Sand and Gravel only as a WBE, and adding LA Construction as an MBE. The amount of Pioneer's bid did not change. The contract was awarded to Pioneer.

Sebena, the next lowest bidder, filed this suit in District Court, arguing that it submitted the lowest conforming bid and that it should have been awarded the contract. On cross-motions for summary judgment, the District Court held that GAA acted within its discretion in accepting the bid of Pioneer.

Did the District Court err in allowing the Gallatin Airport Authority to accept the modified bid of Pioneer Ready Mix?

Summary judgment is proper when there are no disputed issues of material fact and where the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Our standard of review of a summary judgment is whether the trial court abused its discretion. First Interstate Bank of Kalispell v. Wann (1988), 235 Mont. 111, 113, 765 P.2d 749, 750. In this case, the parties agree that

3

there are no disputed issues of material fact. They do not agree on the application of the law to those facts.

Sebena asserts that Pioneer's original bid should have been rejected and that no modification should have been allowed. Schedule I, attached to the invitation to bid provided that "[b]ids that do not contain a Schedule [of participation by MBEs and WBEs] or bids containing a schedule that is incomplete shall be considered as nonresponsive and shall be rejected." Sebena argues that Pioneer's bid should be considered nonresponsive under that provision.

In Martel Const. v. Montana State Bd. of Examiners (1983), 205 Mont. 332, 668 P.2d 222, this Court held that state officers have the power to waive immaterial irregularities in any bid offered. Sebena argues that Martel no longer controls because new statutes and administrative regulations have been enacted since it was decided. Specifically, § 18-4-303, MCA, a part of the Montana Procurement Act, provides in part that

> (4) Bids must be unconditionally accepted without alteration or correction, except as authorized in this chapter. Bids must be evaluated based on the requirements set forth in the invitation for bids . . .
>
> . . .
>
> (6) The contract must be awarded with reasonable promptness by written notice to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids . . .

4

Sebena maintains that the present statute and rules are similar to those which governed in Chas. N. White Const. Co. v. Dept. of Labor (N.D. Miss. 1979), 476 F.Supp. 862. In that case, which was distinguished in Martel, the administrative agency had determined that a bid which did not contain written acknowledgment of receipt of addenda to the invitation for bids was nonresponsive. The court held that the determination of nonresponsiveness was not error which would permit the issuance of an injunction. White, 476 F.Supp. at 867.

The standard of review used in White was the limited review of the decision of an administrative agency. White, 476 F.Supp. at 866. That standard does not apply here because there has been no intermediate agency review. The standard of review of procurement decisions under the federal statutes and rules for WBE and MBE participation has been expressed as follows:

> [C]ourts should not overturn any procurement determination unless the aggrieved bidder demonstrates that there was no rational basis for the agency's decision . . . [The court's] inquiry must fully take into account the discretion that is typically accorded officials in the procurement agencies by statutes and regulations. Such discretion extends not only to the evaluation of bids submitted in response to a solicitation but also to determination by the agency with respect to the application of technical, and often esoteric, regulations to the complicated circumstances of individual procurements.
>
> . . .

5

> Only when the court concludes that there has
> been a clear violation of duty by the procure-
> ment officials should it intervene in the
> procurement process and proceed to a deter-
> mination of the controversy on the merits.

M. Steinthal & Co. v. Seamans (D.C. Cir. 1971), 455 F.2d 1289, 1301

and 1303.

In entering its summary judgment for GAA, the District Court

stated that

> [t]he facts of this case indicate the neces-
> sity that some discretion be permitted for a
> granting agency to carry on its business; it
> should have the power to exercise discretion,
> so long as it stays within reasonable bounds
> of fairness and efficiency.

We agree with the statement of the District Court. Section 18-4-

303(5), MCA, specifically provides that corrections for inadvertent

errors in bids may be permitted. As GAA points out, Pioneer's bid

properly showed 2 percent participation by MBEs and 4 percent par-

ticipation by WBEs. On its face, the "Schedule of Participation"

was complete. Only after conferring with the FAA Civil Rights

Office in Seattle did GAA determine that a substituted "Schedule

of Participation" would be required. We conclude that Pioneer's

original bid contained a complete schedule and that the bid was not

"nonresponsive" to the invitation to bid.

We hold that the rule expressed in Martel still stands: state

officials have discretionary power to waive immaterial irregular-

ities in any bid offered. Further, we conclude that the irregular-

6

ity in Pioneer's bid was immaterial. This is _not_ to say, as Sebena suggests, that goals for MBE and WBE participation are immaterial. The original bid from Pioneer, on its face, met the MBE and WBE participation goals. The bid that was accepted also met those goals. Pioneer's willingness to amend its bid shows that it was not attempting to avoid complying with the goals for participation by minority-owned and woman-owned businesses.

Sebena also argues that not only was it improper to list Bozeman Sand and Gravel as both a WBE and an MBE, but that Bozeman Sand and Gravel was not qualified as either. Bozeman Sand and Gravel's qualification as a WBE was determined from a list of certified "Disadvantaged Business Enterprises" promulgated by the Montana Department of Highways. There are administrative procedures for third-party challenges to such certification of a business. See 49 C.F.R. § 23.55. There is nothing in the record to indicate that Sebena followed those procedures. We hold that, having failed to exhaust its administrative remedies, Sebena is now barred from challenging Bozeman Sand and Gravel's certification.

Affirmed.

_J. A. Turnage_
Chief Justice

7

We concur:

_____

_____

_____

_____
                    Justices

8