NO.  93-190

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

KEVIN PETRI, d/b/a
ALL PURPOSE SERVICES,

          Plaintiff and Appellant,

     v.

MONTANA STATE UNIVERSITY,

          Defendant and Respondent.

FILED

OCT 04 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

          J. David Penwell, Bozeman, Montana

          For Respondent:

          Leslie C. Taylor, Bozeman, Montana


                              Submitted on Briefs:  August 27, 1993

                                        Decided:  October 4, 1993
Filed:


                    _____
                                 Clerk

Chief Justice **J.** A. **Turnage** delivered the Opinion of the Court.

Kevin Petri, d/b/a All Purpose Services, brought this action against Montana State University (MSU) seeking damages for its failure to accept his bids on two construction projects. Following trial to the court, the District Court for the Eighteenth Judicial District, **Gallatin** County, entered judgment for MSU. We affirm.

While Petri does not concisely state the issues he wishes to raise on appeal, they can be characterized as follows:

1. Did the District Court err in concluding that MSU did not act arbitrarily and capriciously by rejecting Petri's bid on the Johnstone project?

2. Did the court err in failing to find that MSU violated a duty to award state contracts to the lowest responsible bidder?

In June of 1991, MSU publicly requested bids for two construction projects. One project consisted of repainting the Paisley Court buildings (Paisley project) and the other involved painting the Johnstone-Mullen-Culbertson buildings (Johnstone project). Opening of bids for the Paisley project was scheduled for 1:00 p.m. on June 20, 1991, and opening of bids for the Johnstone project was scheduled for one-half hour later, at **1:30** p.m.

Both bid openings were conducted by Cecilia Vaniman, an architect for MSU. Petri submitted a **timely** bid for the Paisley project, which Vaniman opened with the other bids at 1:00. When it was **1:30** p.m. by the clock in the bid opening room, Vaniman

2

announced the closing of bids for the Johnstone project. The sole bid, submitted by Hobaugh Construction Company, was opened.

Minutes later, Petri appeared in the room and attempted to submit a bid for the Johnstone project. Vaniman refused to accept the bid. She confirmed that the bid room clock was accurate by phoning the state government agency in Helena, Montana, which supervised state construction projects. Petri then left the office.

Within a few hours, Petri returned to Vaniman's office and asked her to reconsider whether to accept his bid on the Johnstone project. When she again refused, he asked her to return his bid on the Paisley project to him. Vaniman complied with that request.

The District Court ruled that Petri waived all rights on the Paisley project by withdrawing his bid on that project. It further ruled that MSU did not violate any Montana statute or bidding requirement concerning the award of the contract for the Johnstone project. It ordered that judgment be entered in favor of MSU.

I

Did the District Court err in concluding that MSU did not act arbitrarily and capriciously by rejecting Petri's bid on the Johnstone project?

The District Court concluded:

[Petri's] bid for the Johnstone project was not timely according to the time-keeping pieces at the Montana State University office in question. Although there was some evidence to suggest that the MSU clock was slightly fast, there is no evidence to support the contention that the MSU employees acted arbitrarily or capriciously.

3

Petri testified that the clock in the bid opening room was three minutes fast as compared with his watch. He called as a witness a retired U.S. West telephone employee, Kent Dreier. Dreier testified that later on the afternoon of June 20, 1991, at Petri's request, he verified that the clock in the bid opening room was three minutes and eight seconds fast according to a confidential U.S. West phone number for obtaining the correct time.

As MSU points out, it cannot be held responsible for coordinating its clock with a time source not available to it. Moreover, the U.S. West time source has not been established as more accurate than the watches of the people present in the bidding room, the clock in that room, or the clock in the Helena, Montana, office. We conclude that Petri's evidence on this point was inconclusive.

Petri also contends that it would be impossible for all the events which transpired between the opening of the bids and the phone call to Helena to have occurred between 1:30 and 1:34 p.m., when the call was completed. However, he does not specify a particular finding relating to this argument, and none of the court's findings address this point directly. The testimony of several persons present in the bid opening room was that the events described occurred between 1:30 and 1:34 p.m., and only Petri's speculative opinion contradicts their testimony.

Petri argues that Vaniman should have exercised her discretionary authority by accepting his bid on the Johnstone project rather than by allowing him to withdraw his bid on the Paisley

4

project. He states that the people in the bid opening room knew he intended to submit a bid on the Johnstone project, because he said so when he submitted his bid on the Paisley project. He quotes this Court:

> [I]rregularities which do not give one bidder a substantial advantage over other bidders, are types of irregularities that can be waived by public officers in awarding contracts.

Martel Const. v. Montana State Bd. of Examiners (1983), 205 Mont. 332, 343, 668 P.2d 222, 228. And, "state officials have discretionary power to waive immaterial irregularities in any bid offered." Sebena Paving v. Gallatin Airport Auth. (1990), 245 Mont. 389, 393, 801 P.2d 614, 616.

In Martel, the irregularity was failure of the successful bidder to make written acknowledgment of receipt of addenda to the solicitation for bids. The irregularities in Sebena involved inclusion of a minority-owned enterprise as a subcontractor.

Neither party has cited Montana case law concerning late bids as an irregularity in bidding for government contracts. MSU points out that, under federal government procurement regulations, hand-carried late bids are almost always rejected. J. McBride & T. Touhey, et al., Government Contracts, Volume 1B, § 10.110[5], p. 10-340 (1993). Although Montana state government contracts are not subject to the federal regulations, the record here clearly reflects that rejection of late bids is the industry-wide practice. Vaniman and two of her supervisors testified that they had never

5

accepted a late bid, in hundreds of bid openings. The purpose of this practice is to prevent a late bidder from observing the terms of the other bids and changing his bid at the last moment.

We conclude that the District Court did not err in treating lateness as a material irregularity in a government bid and in concluding that MSU did not act arbitrarily and capriciously in rejecting Petri's bid on the Johnstone project because it was late.

## II

Did the court err in failing to find that MSU violated a duty to award state contracts to the lowest responsible bidder?

Petri cites § 18-1-102, MCA, which provides that public contracts shall be awarded "to the lowest responsible bidder." He argues that the decision not to accept his bid violated MSU's statutory duty to accept the lowest bid on the Johnstone project.

Because Petri was not allowed to submit his bid on the Johnstone project, there is no proof that his would have been the lowest bid meeting the requirements for the project. We therefore hold the court did not err in failing to find that MSU violated a duty to award state contracts to the lowest responsible bidder.

Affirmed.

Chief Justice

We concur:

_____

_____

_____

_____
                Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's conclusion that MSU could properly reject Petri's bid because it was late. Because I conclude that Petri's bid was legally rejected, it necessarily follows that he was not the lowest bidder. However, I disagree with the majority's conclusion that there is no proof that Petri's bid would have been the lowest, had it been timely received.

For these reasons, I concur with the result of the majority opinion without agreeing with all that is said therein.

_____
                Justice

8

October 4, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


J. David Penwell
Attorney at Law
P.O. Box 1677
Bozeman, MT 59715

Leslie C. Taylor, Esq.
Montana State University
Rm. 211, Montana Hall
Bozeman, MT 59717


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy