CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
Kevin Petri, d/b/a All Purpose Services, brought this action against Montana State University (MSU) seeking damages for its failure to accept his bids on two construction projects. Following trial to the court, the District Court for the Eighteenth Judicial District, Gallatin County, entered judgment for MSU. We affirm.
While Petri does not concisely state the issues he wishes to raise on appeal, they can be characterized as follows:
1. Did the District Court err in concluding that MSU did not act arbitrarily and capriciously by rejecting Petri’s bid on the Johnstone project?
2. Did the court err in failing to find that MSU violated a duty to award state contracts to the lowest responsible bidder?
In June of 1991, MSU publicly requested bids for two construction projects. One project consisted of repainting the Paisley Court buildings (Paisley project) and the other involved painting the JohnstoneMullen-Culbertson buildings (Johnstone project). Opening of bids for the Paisley project was scheduled for 1:00 p.m. on June 20,1991, and opening of bids for the Johnstone project was scheduled for one-half hour later, at 1:30 p.m.
Both bid openings were conducted by Cecilia Vaniman, an architect for MSU. Petri submitted a timely bid for the Paisley project, which Vaniman opened with the other bids at 1:00. When it was 1:30 p.m. by the clock in the bid opening room, Vaniman announced the closing of bids for the Johnstone project. The sole bid, submitted by Hobaugh Construction Company, was opened.
Minutes later, Petri appeared in the room and attempted to submit a bid for the Johnstone project. Vaniman refused to accept the bid. She confirmed that the bid room clock was accurate by phoning the state government agency in Helena, Montana, which supervised state construction projects. Petri then left the office.
*394 Within a few hours, Petri returned to Vaniman’s office and asked her to reconsider whether to accept his bid on the Johnstone project. When she again refused, he asked her to return his bid on the Paisley project to him. Vaniman complied with that request.
The District Court ruled that Petri waived all rights on the Paisley project by withdrawing his bid on that project. It further ruled that MSU did not violate any Montana statute or bidding requirement concerning the award of the contract for the Johnstone project. It ordered that judgment be entered in favor of MSU.
I
Did the District Court err in concluding that MSU did not act arbitrarily and capriciously by rejecting Petri’s bid on the Johnstone project?
The District Court concluded:
[Petri’s] bid for the Johnstone project was not timely according to the time-keeping pieces at the Montana State University office in question. Although there was some evidence to suggest that the MSU clock was slightly fast, there is no evidence to support the contention that the MSU employees acted arbitrarily or capriciously.
Petri testified that the clock in the bid opening room was three minutes fast as compared with his watch. He called as a witness a retired U.S. West telephone employee, Kent Dreier. Dreier testified that later on the afternoon of June 20, 1991, at Petri’s request, he verified that the clock in the bid opening room was three minutes and eight seconds fast according to a confidential U.S. West phone number for obtaining the correct time.
As MSU points out, it cannot be held responsible for coordinating its clock with a time source not available to it. Moreover, the U.S. West time source has not been established as more accurate than the watches of the people present in the bidding room, the clock in that room, or the clock in the Helena, Montana, office. We conclude that Petri’s evidence on this point was inconclusive.
Petri also contends that it would be impossible for all the events which transpired between the opening of the bids and the phone call to Helena to have occurred between 1:30 and 1:34 p.m., when the call was completed. However, he does not specify a particular finding relating to this argument, and none of the court’s findings address this point directly. The testimony of several persons present in the *395 bid opening room was that the events described occurred between 1:30 and 1:34 p.m., and only Petri’s speculative opinion contradicts their testimony.
Petri argues that Vaniman should have exercised her discretionary authority by accepting his bid on the Johnstone project rather than by allowing him to withdraw his bid on the Paisley project. He states that the people in the bid opening room knew he intended to submit a bid on the Johnstone project, because he said so when he submitted his bid on the Paisley project. He quotes this Court:
[Ijrregularities which do not give one bidder a substantial advantage over other bidders, are types of irregularities that can be waived by public officers in awarding contracts.
Martel Const. v. Montana State Bd. of Examiners (1983), 205 Mont. 332, 343, 668 P.2d 222, 228. And, “state officials have discretionary power to waive immaterial irregularities in any bid offered.” Sebena Paving v. Gallatin Airport Auth. (1990), 245 Mont. 389, 393, 801 P.2d 614, 616.
In Martel, the irregularity was failure of the successful bidder to make written acknowledgment of receipt of addenda to the solicitation for bids. The irregularities in Sebena involved inclusion of a minority-owned enterprise as a subcontractor.
Neither party has cited Montana case law concerning late bids as an irregularity in bidding for government contracts. MSU points out that, under federal government procurement regulations, hand-carried late bids are almost always rejected. J. McBride & T. Touhey, et al., Government Contracts, Volume IB, § 10.110[5], p. 10-340 (1993). Although Montana state government contracts are not subject to the federal regulations, the record here clearly reflects that rejection of late bids is the industry-wide practice. Vaniman and two of her supervisors testified that they had never accepted a late bid, in hundreds of bid openings. The purpose of this practice is to prevent a late bidder from observing the terms of the other bids and changing his bid at the last moment.
We conclude that the District Court did not err in treating lateness as a material irregularity in a government bid and in concluding that MSU did not act arbitrarily and capriciously in rejecting Petri’s bid on the Johnstone project because it was late.
*396 II
Did the court err in failing to find that MSU violated a duty to award state contracts to the lowest responsible bidder?
Petri cites § 18-1-102, MCA, which provides that public contracts shall be awarded “to the lowest responsible bidder.” He argues that the decision not to accept his bid violated MSU’s statutory duty to accept the lowest bid on the Johnstone project.
Because Petri was not allowed to submit his bid on the Johnstone project, there is no proof that his would have been the lowest bid meeting the requirements for the project. We therefore hold the court did not err in failing to find that MSU violated a duty to award state contracts to the lowest responsible bidder.
Affirmed.
JUSTICES GRAY, HUNT and WEBER concur.